208 So.2d 506 (1968)
Hubert NELSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 1260 and 1263.
District Court of Appeal of Florida. Fourth District.
March 28, 1968.
*508 W.D. Frederick, Jr., Public Defender, and William B. Barnett, Asst. Public Defender, Orlando, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
BARNS, PAUL D., Associate Judge.
On an information the appellant was charged, tried and convicted of conspiracy, robbery and assault, when represented by the public defender. He was sentenced on September 24, 1964, and no appeal was taken. On July 14, 1966, the defendant filed a post-conviction motion for relief which motion was denied after a full evidentiary hearing with the defendant present and represented by the public defender. In addition to denying relief the court held the defendant in contempt for wilfully filing a sworn false motion for relief and sentenced the defendant to be imprisoned in the county jail for one year and pay a fine of $500.00 in default of which he would be confined for an additional period of sixty days. Thereupon, the defendant appealed from both judgments. We affirm.
Appellant's attorney has failed and neglected to state in his brief the assignment of error relied on for reversal, but we find that his first point argued comes within the scope of his first assignment: that "the Court erred in denying Defendant's Motion to Vacate and Set Aside Judgment and Sentence * * *."
At the conclusion of the evidentiary hearing the lower court denied the motion but failed to "make findings of fact" as prescribed by Rule 1, ch. 924, App., F.S.A. At the conclusion of an evidentiary hearing for post-conviction relief the trial judge should make findings of fact as prescribed by the rule. Appellant argues that he was denied effective assistance of counsel when his attorney failed and refused to take an appeal.

NATURE OF POST-CONVICTION MOTION FOR RELIEF
As stated in Tolar v. State, Fla. App. 1967, 196 So.2d 1, 3:
"Post-conviction motions for relief collaterally attacking judgments and sentences under Criminal Procedure Rule No. 1 are basically in the nature of writs of error coram nobis. The federal counterpart to Criminal Procedure Rule No. 1 is § 2255 of Title 28, U.S.C.A., from which Rule 1 was modeled. Austin v. State, Fla.App. 1964, 160 So.2d 730. As stated by the late Honorable John J. Parker concerning § 2255: `This motion is in the nature of an application for a writ of error coram nobis and is merely declaratory of existing law [cases cited].' 8 F.R.D. 171, 175. The Reviser's Note to § 2255, supra, states:
"`This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus. * * *'
"Annotation references: 96 L.Ed. 244; 20 A.L.R.2d 976. * * *
"Since § 2255 and Rule 1 were both for the purpose of meeting the same kind of practical problems encountered in habeas corpus proceedings, and since Rule 1 is almost literally the same as § 2255, a reading of United States v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, *509 96 L.Ed. 232, is necessary for an understanding of the history, purpose and construction of both. * * *"
To the same effect, Lee v. State, Fla.App. 1967, 204 So.2d 245.

WANT OF EFFECTIVE ASSISTANCE OF COUNSEL-FAILURE TO APPEAL-
The defendant had a constitutional procedural right of appeal, but the failure of the indigent's attorney to appeal from a judgment of conviction is not sufficient, when standing alone, to raise a constitutional question collaterally; there must be a clear showing of a plain reversible error in the trial proceedings. Mitchell v. United States, 1958, 103 U.S.App. D.C. 97, 254 F.2d 954, on a motion under 28 U.S.C. § 2255, held:
"His present counsel, appointed by the District Court, contends that because trial counsel did not appeal, trial counsel did not give the defendant the `effective assistance' to which he was entitled. The defendant says his trial counsel refused to appeal because the defendant could not pay him a fee. But such a refusal, in the circumstances of this case, is not a ground for vacating the sentence.
"It has been said that `failure to appeal may not be excused upon a mere showing of neglect of counsel.' Dennis v. United States, 4 Cir., 177 F.2d 195. Perhaps that statement is too broad. We need not now decide whether failure to appeal would be a denial of effective assistance, and would open a conviction to `collateral attack' under § 2255, if there were plain reversible error in the trial. There was no such plain error in this trial."
Holdings to the same effect: Taylor v. United States 4 Cir.1949, 177 F.2d 194; Dennis v. United States, 4 Cir.1949, 177 F.2d 195; Owsley v. Cunningham, D.C. Va. 1961, 190 F. Supp. 608; United States v. Peabody, D.C.Wash. 1958, 173 F. Supp. 413. The question of the lack of effective assistance of counsel is well stated in Dodd v. United States, 9 Cir.1963, 321 F.2d 240:
"Many of the grounds often asserted to sustain lack of effective assistance of counsel do not justify a hearing or entitle a petitioner to relief. Of such character are contentions as to the `competence of counsel.' See Kennedy v. United States, (5 Cir., 1958) 259 F.2d 883, 886, cert. den. 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982; the `quality of a defense' or matters of `counsel's judgment, Mitchell v. United States (supra 259 F.2d [787] at 794); `general statements expressing dissatisfaction with trial results,' Frand v. United States, (10 Cir., 1961) 289 F.2d 693, 694; or `a matter of trial strategy,' McDonald v. United States, (9 Cir., 1960) 282 F.2d 737, 740, 741.
"To justify the vacation of a criminal judgment it seems clear that the showing at the hearing must be that the `attorney's conduct was so incompetent that it made the trial a farce,' Black v. United States, (9 Cir., 1959) 269 F.2d 38, 42; cert. den. 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357; Latimer v. Cranor, (9 Cir., 1954) 214 F.2d 926; (habeas corpus); Mitchell v. United States (supra). Washington v. United States, (9 Cir., 1962) 297 F.2d 342; cert. den. 370 U.S. 949, 82 S.Ct. 1597, 8 L.Ed.2d 815, requires a showing that the trial was a `farce and mockery of justice, shocking to the conscience of the court.' (297 P.2d p. 344); to the same effect Stanley v. United States, (9 Cir., 1957) 239 F.2d 765.
"Kennedy v. United States, (5 Cir., 1958) 259 F.2d 883; cert. den. 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982, requires a showing of
"`misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interests * * *' (259 F.2d p. 886).

*510 "But in the case at bar one of appellant's contentions is that his attorney failed to file a timely notice of appeal after being instructed to do so. Failure or refusal of counsel to file notice of appeal has been a frequent contention of petitioners in Section 2255 proceedings. In a recent case, Rivera v. United States, (9 Cir., May 28, 1963) 318 F.2d 606 (footnote 4) we did not reach the problem since it was raised for the first time in the briefs on appeal.
"We think Fay v. Noia, (1963) 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 and Rule 37, Rules of Criminal Procedure, have an impact on this problem, but before discussing their effect we review briefly the current case law.
"We summarize the cases in the margin. They demonstrate generally the following principles:
"(1) failure to appeal may not be excused by a mere showing of neglect of counsel;
"(2) relief will be denied where there was a knowing or calculated decision not to appeal;
"(3) in any event there would have to be the additional showing of `plain reversible error at the trial' in order for relief to be granted." (Footnotes omitted.)
The reason, or ratio decidendi, for holding that the defendant must show, and prove by a preponderance of the evidence, plain reversible error at trial is because after conviction it is presumed that the trial was regular and fair and that his counsel served him faithfully and competently. The right of an indigent defendant to the assistance of counsel in a criminal prosecution is basic and fundamental. The accused enjoys the presumption of innocence and a fair trial requires the assistance of counsel unless waived. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. However, on an appeal by a convicted defendant he is on a different footing. The defendant no longer enjoys the advantage of the presumption of his innocence on appeal and the state on appeal has the advantage of the presumption that the trial was regular and without harmful error as to the defendant. McIntosh v. Commonwealth, Ky. 1963, 368 S.W.2d 331.
The defendant's right to an appeal "as a matter of right" is granted by the Constitution, § 5(3), Article V, F.S.A., State ex rel. Callahan v. Michell, Fla. 1964, 170 So.2d 290, Crownover v. Shannon, Fla. 1964, 170 So.2d 299.
Neither due process nor equal protection require an appeal or that an indigent convicted of crime shall have as of course the services of an attorney provided by the state to take an appeal. Such a requirement would be the cause of many frivolous appeals which would cause congestion and retard the speedy administration of justice. No attorney is required in the discharge of his duty to a client to take a frivolous appeal or one which he justly believes without merit. However, if having represented one as counsel at trial in a criminal case, he believes harmful and prejudicial error to have occurred by reason of which he believes a reversal on appeal is likely or probable for good reason, he should so advise his client and prosecute an appeal unless the defendant wishes otherwise; and, of course, when success on appeal would likely result in a new trial which, in turn, might result in a more severe penalty, the appeal should only be taken with consent and approval of the accused after he has been fully advised.
As to the effective assistance of counsel required to be given to an indigent defendant and post-conviction relief for the lack thereof, Lewis v. United States, 1961, 111 U.S.App.D.C. 13, 294 F.2d 209, states:
"So the question is simply whether the Constitutional right to counsel is denied when trial counsel are of opinion *511 that no grounds for appeal exist and so do not note an appeal. Obviously, we think, counsel fulfilled their professional obligations. They would have, or should have, done exactly the same things if they had been fully paid, representing a client who had engaged them and paid them. No lawyer is under obligation to appeal a judgment if in his professional opinion no error has been committed by the trial court and no appeal properly lies. Indeed his obligation is the other way. Appeals are for the purpose of correcting errors; they are not for the purpose of affording a review of an entire trial and substituting the views of the appellate court for the decision of the trial court upon all questions which the trial court is called upon to decide in the course of the trial. It is settled beyond doubt that, while any alleged error may be posed for decision of the appellate court by a direct appeal, only Constitutional questions, questions of jurisdiction, or questions concerning actions outside statutory restrictions or otherwise subject to collateral attack remain open to collateral attack by means of a Section 2255 motion. * * *"
and Busby v. Holman, 5 Cir.1966, 356 F.2d 75, held:
"In considering this contention of the appellant we must bear in mind that the constitutional requirement of effective assistance of counsel does not require or permit the court upon a subsequent review to analyze counsel's mental proccesses in order to determine whether every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued. United States ex rel. Boucher v. Reincke, 2 Cir.1965, 341 F.2d 977, 981. It is not counsel who is on trial. There can be held to be a lack of the effective assistance of counsel only when it appears that counsel's assistance was so grossly inept as to shock the conscience of the court and make the proceedings a farce and a mockery of justice. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 669. See, also, Monroe v. Huff, 1944, 79 U.S.App.D.C. 246, 145 F.2d 249; Kinney v. United States, 10 Cir.1949, 177 F.2d 895, and Rushing v. Wilkinson, 5 Cir.1959, 272 F.2d 633, 638. Judge Minton well expressed the rule in United States ex rel. Feeley v. Ragen, 7 Cir.1948, 166 F.2d 976, 980, as follows:
"`* * * Whenever the court in good faith appoints or accepts the appearance of a member of the bar in good standing to represent a defendant, the presumption is that such counsel is competent. Otherwise, he would not be in good standing at the bar and accepted by the court. The constitutional requirements have been met as to the necessity for counsel. If the action of counsel in the presence of the court in the conduct of the trial reduces the trial to a travesty on justice, such conduct might be considered on the proposition that such a trial was a denial of due process. The conduct of counsel in the trial of a case is that of only one of the officers of the court whose duty it is to see that the defendant receives a fair trial. He is only one of the actors in the drama. The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce. * * *
"`Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show the representation of counsel was such as to reduce the trial to a farce or a sham. Otherwise, they should be dismissed.'"
After an appeal has been taken by an indigent defendant convicted of a felony, he is constitutionally entitled to the *512 assistance of counsel to prosecute the pending appeal. Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Anders v. State of California, 1967, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. An appeal is the continuation of the original action, and an attorney authorized by the defendant or the court to assist a defendant in the defense of a prosecution has authority to appeal, and no new order of the court is required to authorize him to appeal as counsel for the defendant.
The reason for the holdings that an indigent convicted defendant is entitled to the assistance of counsel in a pending appeal is to make more certain that his appeal is meaningful and not an empty procedural process; such defendant needs such service to insure a proper basic record on appeal and professional services to the appellate court for the benefit of the defendant in briefing the case. Waiver of oral argument might be permitted but not the filing of an appropriate brief. A proper record on appeal and a full and fair brief by an attorney as his advocate in a pending appeal are indispensable to insure a fully effective appeal. Douglas and Anders are decisions where an appeal had already been taken and both cases were then pending on an appeal and neither decision involved the denial of due process for the failure of counsel to initiate an appeal. To so hold would expand and enlarge on the court's holding.
The defendant's post-conviction motion for relief contained various grounds for relief,[1] all of which were abandoned at the evidentiary hearing on the motion with the defendant present, except his request that his attorney take an appeal.
The position taken by the defendant's counsel, the public defender, at the conclusion of the post-conviction hearing is clarified by the following colloquy:
"MR. CACCIATORE: Your Honor, the defendant alleged in his petition that he was not advised of his right to take an appeal; and, in fact, was refused. He stated on the witness stand that he was not advised to take an appeal and Mr. DuMond, the witness for the State, did not refute this allegation. He did not state that he advised this defendant of his right to take an appeal.
"THE COURT: You mean that it is the position of the Public Defender that in the representation of this defendant that the Public Defender failed to perform its constitutional duty to the defendant, that there was a constitutional duty of the Public Defender at that time to advise the defendant, even though he did not feel there were any grounds for an appeal, to advise him of his right to appeal, even though he did not feel it was warranted?
"MR. CACCIATORE: It is our contention that even though he did not feel *513 that he had grounds on which to take an appeal, that he had the duty to advise the defendant of the constitutional right to appeal.
"THE COURT: That is the position of the Public Defender?
"MR. CACCIATORE: That is the position of the Public Defender. * * *
"* * *
"MR. CACCIATORE: If the defendant was denied his right to appeal, he would be allowed to present to the trial court what normally would have been in the assignments of error to the Appeals Court.
"* * *
"MR. CACCIATORE: It is our contention and I do not have the case citations with me, but I will get them if Your Honor wishes, that the error normally reviewable by the Criminal Procedure Rule No. 1 petition 
"* * *
"MR. CACCIATORE: We feel that some of the contentions in the petition would be reviewable on the merits 
"THE COURT: I see. Now, what allegations in the petition itself are reviewable as assignments of error or as a motion for a new trial? Which allegations in the petition?
"MR. CACCIATORE: At this point in time I would have to review it, Your Honor.
"THE COURT: Here it is.
"MR. CACCIATORE: I have it here, Your Honor.
"* * *
"MR. CACCIATORE: In light of this testimony here today, I do not find now any error that would be reviewable, Your Honor."
As to the defendant's grounds for relief that his counsel refused to motion the court for a new trial, it was established by the minutes of the court that such a motion was made and denied. As to the defendant's trial attorney advising or informing him in respect to an appeal and his attitude and acts in that regard, he testified:
"BY MR. CACCIATORE:
"Q. Mr. DuMond, did you at the conclusion of this trial of this defendant advise him of his right to take an appeal?
"A. I don't remember the conversations I have, er, had after the trial. I follow the practice of taking an appeal whenever requested by the defendant or if I feel that an appeal should be taken because there was error to justify an appeal.
"Q. And in situations where you felt there was not judicial error or where they did not request that you take an appeal, did you advise them of their constitutional right to have the case reviewed by an appellate court?
"A. I cannot remember any specific advice to this defendant.
"Q. Did you have conversation with him subsequent to the return of the verdict and the adjudication of guilt?
"A. Yes, either down there in the witness room outside the Courtroom or upstairs that same day.
"Q. Did you have any conversation with him subsequent to the day of the adjudication of guilt?
"A. I don't believe so.
"Q. Do you know if you sent to the defendant a written correspondence advising him of his right to take an appeal?
"A. I don't recollect that."
The foregoing matter clearly indicates that the public defender did not abandon the defendant after an adverse verdict and further shows that his professional conclusions *514 were that the defendant had received a fair trial and that it was free from substantial error, hence his ethical duty did not require or permit him to take an appeal.
The mere failure of an attorney to take an appeal gives rise to no constitutional question; however, with other factors added it might. In this case grounds of the defendant's motion that perjured testimony was knowingly used against the defendant by the state and the ground that the state used inflammatory and argued extraneous matters before the jury might well show the failure to protect the defendant's constitutional rights; but not only did the defendant not establish these grounds by a preponderance of the evidence, he completely abandoned them and the other grounds at the hearing, except the failure of his attorney to advise him of his right to appeal.
The right of a defendant to relief on a post-conviction motion under Florida Criminal Procedure Rule 1 is measured by the same standards as a federal prisoner under § 2255 of Title 28, U.S.C.A. To justify relief under the rule or the statute require a showing that the moving defendant's constitutional rights have been denied or infringed to the extent that judgment is subject to collateral attack; such attack must be such as would warrant the granting of a writ of habeas corpus, governed by the principles that habeas corpus may not be used as a substitute for an appeal. As held in Larson v. United States, 5 Cir.1960, 275 F.2d 673:
"A motion under Section 2255 is a post-conviction proceeding to enable a federal prisoner to attack the validity of a sentence, if the sentence is `in violation of the Constitution or laws of the United States'. But the constitutional ground must be `such denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.' A collateral attack may be sustained only upon grounds which would warrant granting a writ of habeas corpus.
"The Great Writ is still the greatest writ. Nevertheless, even the Great Writ may not be used as a substitute for appeal or writ of error to reverse a judgment. Thus, in Howell v. United States, 4 Cir., 1949, 172 F.2d 213, 215, Judge Parker held:
"`It is elementary that neither habeas corpus nor motion in the nature of application for writ of error coram nobis can be availed of in lieu of writ of error or appeal, to correct errors committed in the course of a trial, even though such errors relate to constitutional rights. It is only when there has been the denial of the substance of a fair trial that the validity of the proceedings may be thus collaterally attacked or questioned by motion in the nature of petition for writ of error coram nobis or under 28 U.S.C.A. 2255.'
"In Sunal v. Large, 1947, 332 U.S. 174, 181, 67 S.Ct. 1588, 1592, 91 L.Ed. 1982, the Supreme Court held:
"`Congress, moreover, has provided a regular, orderly method for correction of all such errors by granting an appeal to the Circuit Court of Appeals and by vesting us with certiorari jurisdiction. It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal. Cf. Warring v. Colpoys, supra [74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025]. If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implication. *515 Every error is potentially reversible error; and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable.'
"In Sunal v. Large, the Supreme Court pointed out that the error did `not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court'. In Bowen v. United States, 5 Cir., 1951, 192 F.2d 515, certiorari denied 343 U.S. 943, 72 S.Ct. 1036, 96 L.Ed. 1348, however, this Court applied the principle to a collateral attack based on lack of due process: `After all, while it is of the essence of the constitutional principles which mark and distinguish our system: that trials be conducted according to law; that in short, the government be obliged to control itself; and that when one has been convicted in violation of those principles he should be accorded relief; it is also of the essence: that the government be enabled to control the governed and to that end that judgments have finality; and that trials, conducted in accordance with law and ending in conviction, some day be at an end. Especially is it of the essence of orderly trials that the right to counsel accorded to defendants by the constitution be not regarded, as the argument here would seem to regard it, as a mere one way street such that, if the strategy and tactics of his trial counsel, in determining not to raise constitutional questions, prove unsuccessful, defendant, without appealing from the judgment, may many years later set it aside in order that, on another trial with another counsel, another course raising these questions may be taken, and so on ad infinitum.' 192 F.2d 515, 517." (Footnotes omitted.)
The mere neglect to take an appeal, whether excusable or not, does not open the door to collateral attack on the judgment by the defendant by motion under Rule 1 or § 2255, in a case where it would not otherwise lie. As held in Hodges v. United States, 1960, 108 U.S. App.D.C. 375, 282 F.2d 858:
"Of course, if the Government has obstructed the accused in his efforts to take a direct appeal, that is another story. Cf. Dowd v. U.S. ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951). But mere neglect in taking an appeal  excusable or not  should not open the door to the bringing of collateral attack under Section 2255, in a case where it would not otherwise lie. Such a view would greatly hamper the courts in their task of rendering prompt justice in current cases, and would tend to revive the `intolerable uncertainty and confusion' which the Supreme Court was seeking to end in its decision in United States v. Robinson, supra, at page 230 of 361 U.S., at page 288 of 80 S.Ct [282, 4 L.Ed.2d 259,] While the concluding footnote in that case reminds the bench and bar that `there are a number of collateral remedies available to redress denial of basic rights,' including the remedy under Section 2255, the Supreme Court could hardly have intended by this to undermine its decision in Robinson, or to expand a collateral remedy into a substitute for an appeal, in a case (like the present) where no basic right has been denied, within the principles announced in Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), and other governing decisions. The scope of relief grantable under Section 2255 or in habeas corpus is not to be diminished by failure to appeal, but neither is it to be increased."
For holdings to the contrary, Coward v. State, Fla.App. 1967, 202 So.2d 778, Jackson v. State, Fla.App. 1964, 166 So.2d 194, Hinton v. State, Fla.App. 1965, 177 So.2d 522.
*516 As stated in Informal Opinion No. 955 (July 29, 1967) of the Standing Committee on Professional Ethics of the American Bar Association on the question of the obligation to take Criminal Appeals in reference to Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (more fully appearing in Lee v. State, Fla.App. 1967, 204 So.2d 245):
"`We think that when a lawyer finds that a motion for new trial or appeal would be wholly frivolous after a conscientious examination of the record, he should comply with the procedures suggested above, and advise the court in accordance with those procedures. This is also the position a non-appointed lawyer should take. He, ethically, should not clog the courts with frivolous motions or appeals. Canon 30 applies both to attorneys for the indigent appointed by the court and attorneys who are paid by their clients in criminal and civil matters. "The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong * * * His appearance in Court should be deemed equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination."'"
The duties of an attorney assisting a defendant at trial are not at an end after verdict and the denial of his motion for a new trial. At this stage, it is his duty to advise with defendant in respect to his right to an appeal on any nonfrivolous grounds and the time limitation as well as the advantages or hazards in event of success.
After conclusion of all proceedings in the trial court, the trial attorney cannot rightfully abandon his client's interest for personal reasons; his professional status in relation to his client does not permit it. The defendant is presumed not to be competent to protect himself and for that reason the state in felony cases is required to provide an indigent with the assistance of an attorney. When the defendant demands or requests that his attorney take an appeal, his duty in that regard is to take the appeal when it is deemed meritorious or nonfrivolous; but his duty to appeal is always limited by his professional ethical obligation to the court not to take a frivolous appeal.

CONTEMPT
The announcement from the bench at the conclusion of the evidentiary hearing on the defendant's post-conviction hearing, after the defendant was orally cited to show cause why he should not be adjudged in contempt for making and filing a perjured or perjurious false motion for relief, clearly reflects the grounds for such action, which grounds are supported by the record, as follows:
"THE COURT: Mr. Cacciatore, here is a person who has been tried and convicted of the crime of Robbery, which is a very serious crime. A crime of violence which did harm to other people. He was at that time appointed the services of the office of the Public Defender and they ably and competently represented and advised and counselled him and he was ethically prosecuted by the State. Now, he comes along and files this motion and he sets in process the whole matter of hearings on the allegations that he makes. He makes very serious allegations by making allegations that he was incompetently represented by the Public Defender and that the Public Defender, who was appointed by the Court and represented him without any cost to him, at public expense, and that he was deprived of his constitutional rights; and he makes serious allegations against this Court and against the prosecuting attorney and the State's witnesses who were produced in the trial of the case. He makes serious allegations against the selection of the jurors in this County and makes all *517 these serious allegations for the purpose of having the judgment and sentence of this Court vacated and set aside on the charge of Robbery.
"And it is true that he was suborned into making making [sic] these allegations, perhaps, which, in fact, means that he not only is guilty of contempt but he may be guilty of the crime of perjury, just as Jay B. Dennis may be guilty of the crime of subornation.
"I think since Criminal Procedure Rule No. 1 and the new constitutional law proclaimed under the Gideon case was declared by the U.S. Supreme Court that there have been thousands of these motions filed and I would venture to say that the, well, at least 95% of them have contained false statements which were known by the affiants to be false at the time they were made in the affidavits. These have filled up the whole processes of the courts so that instead of having time to devote to the trials of cases of persons not yet convicted of a crime, they must hash and rehash these cases, and the State is called upon to disprove flagrant allegations under oath and the court has to hear them; and these petitions have clogged up the trial courts and the processes of the appellate courts to the extent that the appellate courts have not only suggested, but urged upon the trial courts that where false statements are made and shown to be false, that the trial courts should do their duty and take affirmative action against those who have made and admitted making these false material allegations, and somewhere or the other this flagrant disregard for the truth in these false statements which are being made by convicted criminals must be brought to a halt. And, so, I have to do my duty in this regard. So, it is the judgment and sentence of the Court that the defendant is adjudged to be guilty of Contempt of Court and for that Contempt he is ordered to be imprisoned in the County Jail for one year, the same to run consecutively with the sentence he is now serving and in addition thereto, and he is ordered to pay a fine of $500.00 or serve sixty days in the County Jail in default of the payment of $500 thereof. This is in addition to the one year. Because I would venture to say that this case has cost Orange County, the public and Orange County, at least $500, to have to have the defendant brought back here on the basis of his sworn allegations, be brought back here from the State Prison, and him knowing all the time that his statements were false; and we have to take up the time of the Public Defender's Office, and all the public officials attendant upon this court, the prosecuting attorney, and all those. Five hundred dollars probably wouldn't even cover it.
"That is the judgment and sentence of th[e] Court."
The appeals in this case, like appellant's motion for relief from the post-conviction judgment, are without merit; and the judgments appealed from are affirmed.
Affirmed.
CROSS and McCAIN, JJ., concur.
NOTES
[1] The grounds for relief as stated in the defendant's sworn motion are that:

(a) His court-appointed counsel "refused to appeal" and refused to "motion the court for a new trial."
(b) The "state knowingly, deliberately, and intentionally used the perjured testimony of State witness John F. Sinamen and Theodore H. Weber to obtain his convictions."
(c) His counsel refused to petition the court for a change of venue.
(d) The "prosecutor during his closing argument to the jury abridged and prejudiced his rights by deviating from the case at the bar, and waived several informations before the jury that were filed against him charging him with robbery. These robbery informations had nothing whatsoever to do with the case at bar. The prosecutor told the jury that he could have tried the petitioner on either one of the informations he had in his hand instead of the one he was being tried on.
(e) His federally guaranteed constitutional rights were violated under the 14th Amendment, when Negroes were arbitrarily and systematically excluded from the trial jury roll in a discriminatory manner.
which motion was filed with the clerk of the trial court, after being signed and sworn to before a Notary Public.