186 So.2d 539 (1966)
SOUTHERN TITLE RESEARCH COMPANY, a Florida Corporation, Appellant,
v.
Jimmie KING, a/K/a Jimmy King, and Almetta King, His Wife, et al., Appellees.
No. 281.
District Court of Appeal of Florida. Fourth District.
May 23, 1966.
*540 Samuel L. Heller, or Johnson & Heller, Ft. Lauderdale, for appellant.
Elton H. Schwarz, Stuart, for appellees.
BARNS, PAUL D., Associate Judge.
This is an appeal by the original plaintiff to a suit to quiet title. From a final *541 summary decree, on motion made by the defendants, granting affirmative relief, the plaintiff brought this appeal. We affirm.
The appellant's assignments of error consist of four pages, but in effect it has designated only two judicial acts as error, viz., (1) the setting aside and vacating of a summary final decree in favor of the plaintiff, and (2) the granting of the summary final decree in favor of the defendant  Kings.
On February 17, 1964, the Southern Title Research Company, appellant-plaintiff (being the grantee in a tax deed issued by the clerk of the circuit court on September 9, 1963, based on tax certificate #14), brought a suit to quiet title against King, the owner at the time of the issuance of the tax deed, and Howard Miller, a mechanic's lien claimant. The defendants filed a motion to dismiss, and plaintiff filed a motion for summary final decree. The court denied defendants' motion to dismiss and granted plaintiff's motion for summary final decree on April 14, 1964, which motion was not defended.
Prior to the commencement of quiet title suit, Southern Title brought a dispossessory proceeding against King for possession of the property (under § 194.54, F.S.A.), which action was not defended, and a writ for possession to Southern Title was issued on January 27, 1964, and executed on January 28, 1964, by placing Southern Title in possession.
On May 15, 1964, Southern Title effected a sale of the property to Louise D. Lewis at a sales price of $6,900.00, 10% of which was paid in cash and the balance evidenced by a purchase money mortgage given in exchange for a warranty deed, the transaction being consummated on May 25, 1964.
Thereafter, on May 29, 1964, King's attorney served a motion to vacate the summary final decree of April 14, 1964, quieting title in Southern Title, which motion was granted by an order of June 22, 1964, setting aside the final decree for reasons of mistake and excusable neglect, after taking testimony.

WAS IT ERROR TO VACATE PLAINTIFF'S SUMMARY FINAL DECREE OF APRIL 14, 1964?
The motion to vacate plaintiff's summary final decree was filed and served on May 29, 1964, which is 45 days after its entry but within the time permitting an appeal. Among other matters, a basic factor for vacating the summary final decree was that (a) On March 22, 1961, the defendant King went to the office of the Clerk of the Circuit Court of Martin County to redeem all outstanding tax certificates on the real property which is the subject of this suit. He paid the clerk $63.95 and received a receipt certifying his redemption of certificate #43, dated June 1, 1960. There was also outstanding at that time certificate #14, dated June 1, 1959, for which the sum of $51.66 would have been necessary for redemption.
Another basic factor for vacating plaintiff's summary final decree was that (b) the holder of said tax certificate #14 subsequently filed it with the clerk's office and brought about a sale of the property on September 2, 1963 (Labor Day). At the sale plaintiff herein was the purchaser. Defendant appeared at the courthouse that afternoon, but, as it was a legal holiday, the clerk's office was closed. Defendant returned on September 3, 1963, and sought to redeem the property. Notwithstanding the fact that the tax deed had not been issued, the clerk refused to permit redemption. Subsequently, on September 9, 1963, a tax deed was issued to plaintiff and filed and recorded in the office of the circuit court.
The substantive law applicable to the situation as stated in the preceding paragraph (as stated by the chancellor) seems to be as follows:
Section 194.02(1), Florida Statutes (1963), F.S.A., specifically provides that *542 redemption may be made after sale and before a tax deed is issued. The affidavit of the clerk shows that application was made by defendants for redemption after sale and before the deed issued. Accordingly, it appears that the clerk's office erred twice in this matter, once, when it failed to find the second outstanding tax certificate and permit its redemption at the time the other certificate was redeemed in 1961, and, secondly, when it refused to permit redemption after the tax deed sale and before the issuance of the tax deed.
In Golden v. Grady, 1948, 160 Fla. 348, 34 So.2d 877 at page 879, the Supreme Court stated:
"* * * when the owner of an interest in land applies in good faith to the proper officer to pay his taxes and is prevented from doing so by the mistake, wrong, or fault of the officer, such an attempt is equivalent to tender, at least so far as to invalidate any subsequent sale of the property for such taxes."
Again in Helseth v. Cleveland Trust Company, Fla. 1950, 49 So.2d 91, the court held that where owners made a bona fide effort to pay their taxes, were at all times diligent in doing so, and would have done so at the time in question except for the mistake of the taxing officer, a tax deed would be cancelled on condition that reimbursement be made to the tax deed grantee of the amounts paid out for taxes, clerk's fee in securing the tax deed, paving, and other improvements on the property.
The Kings are of the Negro race; the husband is a mechanic and can read some, but he depends upon his wife for the full import of written matter. He attempted to redeem his property from the tax sale before the tax deed was issued, and, when he was told by the clerk of the circuit court that he had "lost his property", he accepted her statement and fully relied upon it because of her office and official position, until he was referred to his present attorney to whom he exhibited his tax receipt received from the clerk of the circuit court and who then discovered the true state of facts as cited in (a) and (b), supra.
Section 192.48(1), F.S.A., provides that former owners of land lost by the Murphy Act "shall have and are hereby allowed a period of one year from the time a deed of any such lands by the trustees of the internal improvement trust fund is recorded * * * to bring suit to recover said land * * * or to set aside sale by the said trustees * * *." Paragraph (2) of said section 192.48 applicable to other tax sales provides:
"The provisions of this section shall apply to any deed hereafter executed pursuant to any tax foreclosure or tax forfeiture to satisfy a tax lien and to any deed executed by the state, county, municipality, drainage district, or other taxing unit conveying or purporting to convey any real estate, title to which is claimed pursuant to any tax foreclosure, tax forfeiture, or any other proceeding to satisfy a tax lien, in the same manner and to the same extent as this section applies to a deed executed by the trustees of the internal improvement [trust] fund as referred to in subsection (1) hereof."
Rule 1.38(b), Rules of Civil Procedure, 30 F.S.A., provides for relief from a final decree on motion for reasons of "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing * * *." This rule requires that, when relief is sought by motion for these reasons, it shall be made "within a reasonable time", but not later than "one year" (Emphasis added.)
The language of our Civil Procedure Rule 1.38(b) is taken from Rule 60(b), Federal Rules of Civil Procedure, and the federal courts have construed the federal rule 60(b) to permit the court, under appropriate circumstances, to reopen final judgments in the absence of a timely motion under the ten-day rule permitting motions for new trial or rehearing. When the *543 motion is made within the time permitted to appeal, this factor adds weight to a motion otherwise showing merit. In Sleek v. J.C. Penney Company, 292 F.2d 256 at page 258 (3d Cir.), the court states:
"* * * we think it is neither necessary nor desirable to impose by implication a ten-day limit on reconsideration of a denial of relief under Rule 60(b), so long as rehearing is requested and granted within the thirty day period during which the ruling under Rule 60(b) is appealable. Certainly the recognition of the court's power to re-examine its ruling during the thirty day period of appealability prejudices no one, and may facilitate the doing of equity which Rule 60 (b) contemplates. Cf. Moore, Federal Practice, 2d ed. 1953, par. 60.22 [3]."
Relief from judgments under our Rule 1.38(b), as under Federal Rule 60(b), depends on the exercise of sound judicial discretion as applied to the facts and circumstances. In McDowell v. Celebrezze, 310 F.2d 43 (5th Cir.), the trial judge, being apprehensive that his previously rendered final judgment was in error, notified the parties in writing to that effect thirty days after final judgment and set the case for a rehearing. On rehearing the prior judgment was vacated and an adverse judgment was entered. In affirming the action of the district court judge and his power to act the appellate court stated (310 F.2d at page 44):
"The Judge's Notice of Rehearing fixed for March 30, 1962, fulfilled the requirement of a written motion. `The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.' F.R.Civ.P. 7(b) (1). The Court could initiate this on its own motion. * * * At least in nonjury case, the action is taken `within a reasonable time' if, as here, it is done before the time for appeal has expired. Sleek v. J.C. Penney Co., 3 Cir., 1961, 292 F.2d 256. Professor Moore supports these views. 7 Moore, Federal Practice, Para. 60.22 [3] (2nd ed. 1955). Confined as it is to the time in which appeal from the final judgment may be taken, this holding has a double virtue. First, it does not circuitously extend the time for appeal. Second, it avoids the necessity for the anomalous action suggested by Professor Moore out of an abundance of caution that a party `take an appeal within proper time and also, within appeal time move the district court for relief; and then ask the appellate court to authorize the district court to proceed and determine the motion.'"
The first attorney consulted by King had only recently been admitted to the Bar and the purpose of such consultation was to protect his friend's claim of lien for labor and material in the improvement of the subject property. In order to protect Miller's lien this attorney filed a motion to dismiss to get time to ascertain whether a tax sale on a holiday was valid. The attorney's conclusion was that the sale on Labor Day was valid and the result was the plaintiff's motion for summary final decree by default.
Since [1] the suit had not been tried on the merits; [2] defendants made a showing of a meritorious defense; and, [3] Section 192.48(2) F.S.A., supra, allows one year (which had not elapsed) for a former owner to seek relief from loss of his property by reason of a tax deed, the chancellor did not err in vacating the summary final decree against the defendants.
The other assignment of error is that the lower court erred in granting defendants' motion for a summary final decree. In avoidance of King's equities as set up in his answer, as recited in (a) and (b), supra, the appellant-plaintiff filed a reply to the effect that, after the issuance of the tax deed to it by the clerk of the circuit court, the appellant-plaintiff brought proceedings for a writ of possession against King, pursuant to § 194.54, F.S.A. A rule to show cause "why writ of possession should not issue" was served on King requiring him to *544 file his written answer within five days in which event a hearing would be had on the rule to show cause. Through a misunderstanding King appeared on the afternoon of the date set for the hearing, but the writ of possession had already been issued in the forenoon by reason of King's default in failing to file a written answer within the five days. The writ was executed and the appellant was placed in possession of the subject property by the sheriff on January 28, 1964.
Since the possessory proceedings above mentioned proceeded by default, no issues of fact or law were tried and determined by the court. Doubtless King could have presented the defense then to the rule to show cause which he now presents by answer to this suit to quiet title, but he did not. If he had done so and the issues had been actually tried and adjudicated against King, such adjudication could have been used as collateral estoppel against King. The default of King in the possessory proceedings admitted the truth of the petition for the writ for the purpose of those proceedings but not for any other purpose. For distinction between res judicata and collateral estoppel see Cromwell v. County of Sac, 1876, 94 U.S. 351, 24 L.Ed. 195; Scott on Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1; Restatement of Judgments, § 68, Comment e. The prior possessory proceedings and this suit to quiet title are not two suits on the same cause of action. The applicable law is aptly stated in Watts v. Watts, 1894, 160 Mass. 464, 36 N.E. 479, 23 L.R.A. 187 (quoted by Scott, supra) as follows:
"* * * In regard to matters not then in controversy, and not heard and determined, although it is conclusive so far as the final disposition of that cause of action is concerned, it is not conclusive to prevent a determination of them according to the truth, if they are subsequently controverted in a different case. Foye v. Patch, 132 Mass. 105, 111; Com. v. Evans, 101 Mass. 25; Burlen v. Shannon, 14 Gray [80 Mass.] 433-437; Thurston v. Thurston, 99 Mass. 39; Lewis v. Lewis, 106 Mass. 309; Burlen v. Shannon, 99 Mass. 200; Hawks v. Truesdell, Id. 557; Lea v. Lea, Id. [493], 496; Cromwell v. County of Sac, 94 U.S. 351 [, 24 L.Ed. 195.] It would be a harsh and oppressive rule which should make it necessary for one sued on a trifling claim to resist it and engage in costly litigation in order to prevent the operation of a judgment which would be held conclusively to have established against him every material fact alleged and not denied in the declaration, so as to preclude him from showing the truth if another controversy should arise between the same parties. There might be various reasons why he would prefer to submit to a claim rather than to defend against it. For the purpose of defending that suit he would have his day in court but once, and if he chose to let the case go by default, or with a trial upon some of the defenses which might be made, and not upon others, he would be obliged forever after to hold his peace. But a plaintiff can claim no more than to be given what he asks in his writ. He cannot justly complain that the defendant has not seen fit to set up defenses and raise issues for the purpose of enabling him to settle facts for future possible controversies. In subsequent proceedings which are independent of the original suit, the judgment in that suit is conclusive as evidence, or may be pleaded as an estoppel, only as to those matters which were put in issue and determined; but it is not necessary that these should be particularly mentioned in the pleadings, if they are involved in the issue made up, and if the case is determined upon the trial of that issue. * * *"
Sale Pendente Lite. The appellant sold the subject property after the entry of the final decree in its favor but within the time permitting an appeal. After final judgment on final decree an action remains pending in the trial court until an appeal is *545 taken or the time for appeal expires, and an appeal is not the commencement of a new action but a continuation of the original action. State ex rel. Andreu v. Canfield, 1898, 40 Fla. 36, 23 So. 591, 42 L.R.A. 72.
As to Louise D. Lewis, it appears that she was a purchaser at private sale pendente lite who has purchased at her peril. However, she is not a party to this suit, and she has not been brought into it by order of court or any process; hence, she has not had her "day in court". As to the effect of the decree against the vendor on the vendee pendente lite, see II Pomeroy's Equity Jurisprudence, 5th ed., §§ 632-642. As to the property of another converted into a different form, see IV Pomeroy's Equity Jurisprudence, 5th ed., § 1051.
The decree appealed from is affirmed.
ANDREWS, Acting C.J., and WALDEN, J., concur.