192 So.2d 346 (1966)
Richard E. SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 6772.
District Court of Appeal of Florida. Second District.
December 2, 1966.
*347 Richard E. Smith, in pro. per.
Earl Faircloth, Atty. Gen., Tallahassee, for appellee.
BARNS, PAUL D., Associate Judge.
The appellant, defendant, Richard E. Smith, after having been found guilty by a jury, was adjudged guilty of uttering a forged check and duly sentenced; thereupon, he prosecuted this appeal. We affirm.
It appears that the defendant was taken into custody two or three days before Police Officer Carlisle interrogated him. He had been taken into custody as a suspect for armed robbery and was not a suspect for the crime he confessed to and found guilty of. His confession was a happen-stance and occurred when Carlisle proceeded to interrogate him after advising him that he had "a right to an attorney" and that he did not have to talk. Officer Carlisle got his lead to his guilt to offense of uttering the forged check by the fortuitous circumstances as follows:
[Officer Carlisle Testifying]
"Q Any promises of reward?
A No, sir.
Q Okay, Detective Carlisle, what transpired at that time?
A I then asked him if he knew what I was going to talk to him about at which time he said, `Yes, I do, about the checks I wrote on Mr. Boardman.'
I asked him if he knew Mr. Boardman. He said, `Yes, I used to work for him at the theatre.'
He told me that he took the checks from Mr. Boardman's office, he went to his room and locked himself in the room for approximately four hours practicing to write them where he felt they were good enough to pass.
He then started crying to me the reason he did it. He hadn't seen his mother for three years and he needed to go to Philadelphia to see her and he left the city shortly thereafter.
I then called Sergeant Wachsmuth, had him come up to the fourth floor, which he did, at which time again Richard was advised of his right to counsel, this time by Sergeant Wachsmuth, where he repeated the same story.
Q Did you mention anything about the question of the name of Abraham Dowdell?
A Yes, he did. In reference to the name used as the payee, that in the *348 theatre where he worked he found a wallet containing a Florida driver's license under the name of Abraham Dowdell. After he used this name 
* * * * * *
THE WITNESS: After he used the Florida driver's license for identification, he placed the wallet containing the driver's license in an envelope and mailed it back to the address which was on the driver's license."
Smith had worked around the theater and surreptitiously obtained blank checks used by the theater company and customarily executed by one Boardman; he took the blank checks and some cancelled checks. Previously, he had found a wallet in the theater containing a driver's license for one Dowdell; hence, having possession of genuine signatures of both Boardman and Dowdell he proceeded to master the art of simulating their genuine signatures. After having executed the check in question by signing the name Boardman as the maker, payable to Dowdell, he then proceeded to the bank to cash the forged check, using the signature of Dowdell on the driver's license to identify himself as Dowdell by his endorsing the check as Dowdell in the presence of the Teller. Smith got the money.
On this appeal, the only question raised by the assignment of error is whether evidence of the oral extrajudicial confession made to Officer Carlisle was freely and voluntarily made. It appears that Smith made no request for counsel, was fairly warned and was in no way coerced or unduly persuaded. The admission of evidence of the oral confession was not proscribed by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, (decided June 22, 1964). The holding in Escobedo, supra, was expanded by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (decided June 13, 1966), but neither Escobedo nor Miranda is required to be applied retrospectively. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 882 (1966). The case sub judice was tried on June 21, 1965.
The defendant was represented at trial by the Public Defender and after conviction and sentence the Public Defender was appointed by the court to represent the defendant in the prosecution of his appeal as an indigent. The Defender duly filed an assignment of error and directions to the clerk for the record on appeal. The record on appeal was properly completed and filed, including a one hundred twenty-two page transcript of the trial proceedings.
Thereupon, the Defender moved this court for leave to withdraw as counsel for the appellant on the ground that the appeal, in his opinion, was frivolous, which motion was granted and the appellant so notified. This left the appellant without counsel on this appeal, and he is still without counsel.

FRIVOLOUS APPEALS
The proceedings above recited and the proceedings we have noted in other cases before this court and reported decisions of other appellate courts, clearly indicate that there is a common belief among the Public Defenders, and others, that a convicted indigent defendant has a constitutional right to have the State furnish an attorney to take a frivolous appeal. Cf. Morris v. State, Fla.App., 189 So.2d 901.
Doubtless, such view is an outgrowth of Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. The Douglas case, supra, does not support such construction; it held that the rule of criminal procedure followed in California which denied an indigent appellant the assistance of counsel requested by him in a pending appeal failed to afford the indigent equal protection under the law. The California *349 criminal procedure found to be "invidious", as stated in the Douglas decision, was:
"In denying petitioners' requests, the California District Court of Appeal stated that it had `gone through' the record [372 U.S. 355] and had come to the conclusion that `no good whatever could be served by appointment of counsel.' 187 Cal. App.2d 802, 812, 10 Cal. Rptr. 188, 195. The District Court of Appeal was acting in accordance with a California rule of criminal procedure which provides that state appellate courts, upon the request of an indigent for counsel, may make `an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. * * * After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court.' People v. Hyde, 51 Cal.2d 152, 154, 331 P.2d 42, 43.
"We agree, however, with Justice Traynor of the California Supreme Court, who said that the `[d]enial of counsel on appeal [to an indigent] would seem to be a discrimination at least as invidious as that condemned in Griffin v. State of Illinois * * *.' People v. Brown, 55 Cal.2d 64, 71, 9 Cal. Rptr. 816, 357 P.2d 1072, 1076 (concurring opinion). * * "
A reason for the need of the assistance of counsel in an appeal is fully appreciated by all appellate courts. Firstly, this professional service is needed in order that the record on appeal will be sufficiently complete and free of immaterial matter to enable the appellate court to know what occurred in the lower court that is material to the appeal. Secondly, this professional assistance is needed in designating judicial errors relied upon for reversal; and thirdly, the brief of counsel in support of the designated errors. The first and second items above mentioned are indispensable to a meaningful appeal and an orderly administration of the functions of appellate courts; and the briefs are highly beneficial in advancing a determination of merits of an appeal. These matters are not likely to be accomplished by an indigent incarcerated in prison without the assistance of counsel.
An appeal is the continuation of the original action and is not the commencement of a new action. Southern Title Research Company v. King, Fla.App. 1966, 186 So.2d 539; State ex rel. Andreu v. Canfield, 1898, 40 Fla. 36, 23 So. 591, 42 L.R.A. 72. Hence, an attorney authorized by the defendant or the court to assist him in the defense of a prosecution has authority to appeal and no new order of court is required.
An attorney assisting an indigent defendant in a criminal case is yoked with a heavy duty, because of his professional value to the defendant and the defendant's helplessness contributed to by his indigency and imprisonment. State ex rel. White v. Hilgemann, 218 Ind. 572, 34 N.E.2d 129, was a proceedings brought by the relator to compel the court to appoint counsel to represent him in taking an appeal after having been convicted of murder in the first degree; in granting relief, the court stated:
"From what has been said, we must conclude that one accused of crime has the right to be provided with counsel literally `at every stage of the proceedings,' including the proceedings by which he may seek a review for error by appeal.
"It is the duty of the trial court to appoint competent counsel to advise the defendant in the first instance. This does not mean, however, that counsel must violate ethical standards and his conscience by interposing defenses where there is no good-faith basis for such action. The constitutional requirement is satisfied *350 when the defendant has had the benefit of the advice and guidance of a reputable and competent attorney. If at any stage of the proceedings the appointed counsel is unable to continue, it is the duty of the trial court to appoint other reputable and competent counsel so that the defendant shall have the benefit of counsel at all stages and until an appeal is perfected and determined, if an appeal is advised. But if competent counsel finds no substantial error to assign upon appeal, and so advises the defendant and the trial court, the constitutional requirement is satisfied and the defendant may not demand that the trial court find and appoint other counsel who will advise an appeal."
Consistent with the above-quoted holding of the Indiana court, which we approve, this court in Carr v. State, Fla.App. 1965, 180 So.2d 381, held:
"A lawyer assigned as counsel for an indigent ought not to seek to be excused for any trivial reason and he should always exert his best efforts in his client's behalf regardless of his personal opinion as to the guilt of the accused. The lawyer is bound by all fair and honorable means to present every defense that the law of the land permits to the end that no person may be deprived of life or liberty but by due process of law. A lawyer is bound to give his client a candid opinion of the merits and probable result of pending or contemplated litigation. His duty does not include, and his Code of Ethics prohibits, his setting up false claims to enable him to win his client's cause. It is unprofessional and dishonorable to deal other than candidly with the facts in the presentation of a cause. Every lawyer must upon his own responsibility decide what causes he will bring to court and he cannot escape it by urging as an excuse that he is only following his client's instructions. The right of an attorney to withdraw from employment, once assumed, arises only from good cause. When a lawyer discovers that his client has no cause and the client is determined to continue it, the lawyer may be warranted in withdrawing on due notice to the client. Rule B, Ethics Governing Attorneys, Section (I), Florida Rules of Court 1965, 31 F.S.A.
"The constitutional guaranteed right to counsel and the principle of equal justice for all requires no more and no less from court-appointed counsel than that which an attorney owes to his fee-paying client."
In Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892, the court found that the Fourteenth Amendment is violated when the state's procedure denies an indigent defendant the benefits of its existing appellate review for reasons as stated by the court as follows:
"The rules of the Indiana Supreme Court expressly permit an appeal from the denial of a writ of error coram nobis, but also require that a transcript be filed in order to confer jurisdiction upon the court to hear such an appeal. The Indiana court has held that under the above-quoted provisions of the Public Defender Act, only the Public Defender can procure a transcript of a coram nobis hearing for an indigent; an indigent cannot procure a transcript for himself and appeal pro se, nor can he secure the appointment of another lawyer to get the transcript and prosecute the appeal. State ex rel. Casey v. Murray, 231 Ind. 74, 106 N.E.2d 911; Jackson v. Reeves, 238 Ind. 708, 153 N.E.2d 604; Willoughby v. State, 242 Ind. 183, [167 N.E.2d 881], 177 N.E.2d 465. The upshot is that a person with sufficient funds can appeal as of right to the Supreme Court of Indiana from the denial of a writ of error coram nobis, but an indigent can, at the will of the Public Defender, be entirely cut off from any appeal at all.
"* * *
"In Eskridge the Court held constitutionally invalid a provision which permitted a trial judge to prevent an indigent from *351 taking an effective appeal. The provision before us confers upon a state officer outside the judicial system power to take from an indigent all hope of any appeal at all. Such a procedure, based on indigency alone, does not meet constitutional standards. We have no doubt that Indiana, with its historic concern for equal justice under law, will find no practical difficulty in correcting the constitutional deficiency which this case exposes.
"The judgments of the Court of Appeals and of the District Court are vacated and the case remanded to the latter, so that appropriate orders may be entered ordering Brown's discharge from custody, unless within a reasonable time the State of Indiana provides him an appeal on the merits to the Supreme Court of Indiana from the denial of the writ of error coram nobis."
The foregoing decision was in review of habeas corpus proceedings initiated in the federal district court subsequent to the decision of Brown v. State of Indiana, 241 Ind. 298, 171 N.E.2d 825. In that case it is shown that the trial court had denied Brown's "Motion to Appoint Counsel and Furnish Transcript of Record", after the Public Defender had notified Brown that he was unable to find any error that would have merit on appeal and that he would not appeal the judgment denying Brown's Petition for Writ of Error Coram Nobis. That court held:
"Consistent with the purpose and of the law, the character, ability, responsibility and the broad authority of the office of Public Defender, this court has held:
`The Public Defender is not required to represent any prisoner whose assertion that he is unlawfully imprisoned, after due investigation, appears in his sound judgment to have no merit. * * *'
"The public defender is not obliged, in cases within the scope of his authority, to make a travesty of his office, by preparing and performing all the formal requisites of an appeal, when such an appeal would be without meritorious grounds which he could in good conscience present to this court for consideration.
"* * *
"Under the circumstances presented, the public defender was under no duty to request a transcript of the proceedings in error coram nobis and, in the absence of a request from said office, the trial court was under no duty to provide a certified copy of said proceedings at public expense."
It will be observed that the Supreme Court of the United States in Lane v. Brown, supra, undoubtedly had before it the denial of the appointment of counsel to prosecute an appeal, as well as the denial of request for a transcript. It did not hinge its decision on the order denying appointment of counsel to appeal from the judgment in the coram nobis proceedings, which was so fully treated by the Supreme Court of Indiana.
An attorney having represented a defendant at trial is already fully informed as to the facts of the case which would support meritorious grounds for an appeal. If, in his judgment, there are no meritorious grounds to support an appeal he should so advise his client and the law does not obligate him to take an appeal; and the ethics of the Bar are that he should abstain from taking an appeal or, under such circumstances, being a party to an appeal, directly or indirectly. Of course, in a case involving capital punishment appeals are regarded more favorably than in noncapital cases. Furthermore, "meritorious grounds" for an appeal are not to be measured by expectation of success. Lastly, applications to the court for discharge by the trial attorney are not regarded with favor since an appeal is a step in the case. Southern Title Research v. King, *352 supra; State ex rel. Andreu v. Canfield, supra; Section 59.30, F.S.A. Compare Johnson v. United States, D.C. Cir., 360 F.2d 844 (1966). An attorney assisting an indigent defendant at trial being of the opinion that there are meritorious grounds to support an appeal and that it is to the best interest of the defendant to appeal, and the defendant being fully advised wants an appeal, should prosecute an appeal, when consistent with the attorney's professional judgment governed by the principles of law and ethics above stated.
Affirmed.
SHANNON, Acting C.J., and HOBSON, J., concur.