215 So.2d 96 (1968)
Cornelius COLEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 1566.
District Court of Appeal of Florida. Fourth District.
October 30, 1968.
*97 Lavon Ward, Public Defender, and Patrick O'Neal, Asst. Public Defender, Fort Lauderdale, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
BARNS, PAUL D., Associate Judge.
Compare Mobley v. State, District Court of Appeal, Fourth District, 215 So.2d 90, opinion filed October 30, 1968.
After being found guilty by a jury on a charge of robbery, motion for new trial denied and after being adjudged guilty and sentenced, the defendant entered this appeal. We affirm.
His counsel on appeal, the public defender, has failed and neglected to state in his brief with his points in argument the specific assignments of error relied on for reversal as is expected of him in the rendering of professional services to his client and to the court. F.A.R. 3.7(f) (4), 32 F.S.A. When seeking a reversal for errors of the lower court, the appellant gains no advantage by not stating the alleged error about which he argues. Furthermore, if he states it, he is more likely to address his argument to it. To do so is good professional practice even in the absence of a court rule.

I
Appellant's first point: "A Prosecuting Attorney may not express his personal belief of the guilt of the accused in closing argument" which point appears to be within the scope of his first assignment of error: "That the Court erred in denying * * * Motions for Mistrial, and either of them, made by the Defendant during *98 the course of the trial." The facts and circumstances giving rise to the point occurred at the end of the closing argument of the prosecution to the jury as follows:
"Gentlemen, I feel the State has proved this case beyond a reasonable doubt, not beyond a shadow of a doubt, but beyond a reasonable doubt that Cornelius Coleman was one of the people who did rob Reverend Penn on June 21st of last year in Broward County, Florida.
"I ask of you that you weigh the evidence, consider it carefully, consider the law as the judge gives it to you, and if you believe the same way I do, bring back a verdict of guilty.
"Thank you for your attention, gentlemen.
"You have been real kind.
"MR. SANDSTROM: May it please the court, I have an objection to make and I would rather make it in the absence of the jury.
"* * * [The judge and counsel retired to the jury room.]
"MR. SANDSTROM: Comes now the defendant and objects to the closing remark of the prosecutor expressing his personal belief in the guilt of the defendant in this particular case and thereupon moves for a mistrial.
"THE COURT: Motion is denied."
The language used by the prosecutor "and if you believe as I do" when considered in full context as used was not an expression of personal opinion irrespective of the evidence but was a permissive conclusion or deduction by him of the sufficiency of the evidence to establish the defendant's guilt. It was fair comment made in the discharge of the function of his office, Washington v. State (per Justice Terrell), 1923, 86 Fla. 533, 98 So. 605; Adams v. State, 1907, 54 Fla. 1, 45 So. 494; at least it was not unfair comment.
Appellant's second point is that "The defendant was denied a fair and impartial trial." His counsel again fails and neglects to correlate this point to any judicial act assigned as error. In support of the point, his counsel imputes error on the voire dire examination of the jury, after directing that the court reporter in transcribing the trial proceedings for this appeal should omit "the voire dire examination of the jurors", which he did. He also contends res gestae evidence to be hearsay and inadmissible. He contends error in denying at trial a request for the prosecution to produce statements of witnesses taken before trial which statements were later produced and inspected by the defendant's counsel at trial. The foregoing contentions are frivolous and without any merit.
Appellant's counsel further contends prejudicial error in permitting identification of the defendant by the state's witness in a police line-up in the absence of the defendant's counsel, contrary to United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The case at bar came on for trial on April 3, 1967, and judgment was rendered on April 6, 1967. And Wade was decided June 12, 1967. The Supreme Court in Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, recognized that Wade was not the application of newly discovered old law, but that it was new law, and held that Wade was prospectively limited and was to be applied to the parties in the case in which it was announced but "not to other litigants [then] similarly situated in the trial or appellate process who have raised the same issue." Furthermore, it has not been made to appear that the in-court identification of the defendant was tainted by the police line-up identification process contrary to United States v. Wade, supra, and that the trial court committed error in respect thereto.

*99 II

Perfunctory or Blind Appeals
It is evident that this appeal was taken perfunctorily and blindly without a thing to guide the public defender except the indigency of the defendant and his request that the public defender exercise his right to appeal, wholly devoid of any prior professional evaluation of merits. The public defender took up where the defendant's retained counsel quit  and before he could arrive at any professional conclusion as to the merits it was necessary that he procure the 746 pages of transcript of the trial proceedings from the official court reporter (with two carbon copies of course) at public expense. The result of this is that the state through the attorney general must incur the further expense of providing the use of assistants to the attorney general with adequate secretarial services to uphold the trial judge's judgment before the appellate court by briefs. Furthermore, the state must attempt to provide enough judges, research aides and clerical assistants on the appellate court to, with reasonable promptness, dispose of the appeal of such cases as well as the privately prosecuted appeals.
The state's public defenders, the attorneys appointed by the federal district courts and, it seems probable, that the Judicial Conference of the United States, in recommending the adoption of Fed.R.Crim. P. 32 (a) (2) are laboring under the impression that Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, permits or requires attorneys assisting convicted indigent defendants charged with crime to take and enter appeals, devoid of the exercise of any professional evaluation of the good faith ground of the appeal, if the indigent convicted defendant so request; and that Douglas is in conflict with the ethical standards requiring good faith; hence, the ethical standard must yield to the Douglas law.
Douglas involved the right of the indigent to the assistance of counsel in a pending appeal in the California District Court of Appeal and did not involve the constitutional right of the indigent to the assistance of counsel to take a blind or perfunctory appeal.
Argument has been made that since a rich man might more than likely be able to procure an attorney to take a frivolous appeal that it follows that the equal protection clause of the Fourteenth Amendment entitles the indigent convicted defendant to be provided with an attorney under the same circumstances to take an appeal. A frivolous or perfunctory appeal is not right, but wrong and the intent of the Fourteenth Amendment is not to ensure that the poor man shall have equal opportunity with a rich man to do wrong by having the sovereignty provide an attorney to take a frivolous or perfunctory appeal.
In construing and evaluating the Douglas decision (and other decisions) and its ratio decidendi, words should not be lifted out of context. As stated in 1B Moore, Federal Practice, ¶ 0.402 [2] (2d ed. 1965):
"* * * We have been admonished by the Supreme Court, as early as Cohens v. Virginia [Cohens v. Virginia (1821) 6 Wheat 264, 399-400, 5 L.Ed. 257, 290], not to disregard the maxim that
"`* * * general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their *100 relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.'"

III

EFFECTIVE ASSISTANCE OF COUNSEL  POST TRIAL NEGLECT:
The blind and perfunctory appeals taken pursuant to the general practice of the public defenders without prior professional evaluation are approximately five per centum (5%) successful, which practice tends to render a disservice to an indigent's appeal possessing merit and a disservice to the appellate court. The following quotations made in respect to appellate courts, likewise apply to the public defender as to results. Professor Geoffrey C. Hazard, Jr., in The Courts, The Public and The Law Explosion (Harry W. Jones ed. 1965), suggests that "volume of cases has some * * * impact on the appellate judicial process" and "the quality of business done is almost always that rising volume adversely affects quality". To avoid the appellate court explosion, occurring in the United States Courts of Appeals as referred to by Chief Justice Warren. (See Mobley v. State 215 So.2d 90), [District Court of Appeal, 4th District opinion filed October 30th, 1968], in the state system it may be that we need full-time public defenders instead of part-time public defenders, or an alternative, full-time assistant public defenders of such quality that their compensation may justly exceed that of the public defenders. The system of part-time public defenders and part-time assistant public defenders can be improved upon.
The defendant's trial counsel knows the case and is more fully professionally informed than anyone else and it is his professional judgment and advice that is then needed in respect to further informed action. If an appeal is to be taken it should be taken by him and it is he that should designate the errors of the trial court to be relied on for reversal in the appellate court; it is he that should designate the matters to be contained in the record on appeal to be considered by the appellate court, necessary to support the errors relied on for reversal. Of course, if the trial counsel is to prosecute the appeal the foregoing course of procedure will be taken by him as of course.
But where under the administrative management of the office, as it is with some of the states' public defenders, an assistant public defender's duties are ended when a motion for a new trial is denied, and the notice of appeal and further prosecution of it falls on another assistant public defender who was not of counsel in the trial court, his only recourse is to take a perfunctory appeal guided only by the request of the indigent convicted defendant, devoid of the exercise of professional evaluation of the merits or good faith of the appeal. As stated in Pope's Essay on Man:
"For forms of government, let fools contest, what'er is best administered, is best."
The duties of an attorney representing a defendant at trial on a criminal charge which is not a petty offense do not end upon the imposition of sentence or after a subsequent motion for a new trial is denied; and it makes no difference whether the counsel is privately retained, court appointed or acting as a public defender. After the termination of the trial court proceedings, the "Assistance of Counsel for his defense" guaranteed by the Sixth Amendment to the Constitution of the United States requires that he give his professional evaluation to the merits of the grounds for an appeal, which the defendant is entitled to as a matter of right, and that he fully inform the defendant as to these matters and particularly as to whether in his opinion an appeal could be supported by good grounds or not. Furthermore, he should advise the defendant of the hazards to him in event of success by reversal on appeal. If the defendant's trial attorney has so informed the defendant and the defendant request an appeal, *101 the trial attorney is duty bound to enter an appeal, unless he has concluded that the appeal if taken would be frivolous and has so advised the defendant.

ENTRY OF APPEAL A TRIAL COURT PROCEEDING
The entry of an appeal is a step in the case and not a new action. The filing of the notice of appeal, the assignments of error and designations for the record on appeal are made in the trial court and the trial attorney is already fully advised as to the whole case and he can with professional skill accomplish these steps with less effort than can any other person. Since he is the attorney for the defendant in the trial court, such proceedings by reason of the circumstances are encumbent on him in the discharge of his professional obligations to his client, the defendant. If because of extraneous circumstances, the trial court attorney for the defendant has been privately retained and should be allowed to withdraw after discharging his trial court functions and the public defender substituted in his stead, such procedure and practice by the trial court attorney will tend to ensure the advancement of the better administration of justice and avoid procedural defaults in the state courts resulting in loss of federal rights.
This practice by the trial court attorney is made necessary by the constitutional right of a defendant to be effectively represented by counsel in the trial court as determined by Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R. 2d 733, and Wainwright v. Simpson, 5 Cir.1966, 360 F.2d 307, and Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Cf. Nelson v. State, Fla.App. 1968, 208 So.2d 506.
Wainwright v. Simpson, supra, after citing Fay v. Noia, supra, held that when the defendant Simpson had been convicted of murder in the first degree with recommended mercy precluding the death penalty, his counsel "deliberately failed to move for a new trial or to file a notice of appeal, although he considered that meritorious grounds were present", that:
"* * * However laudable his motive, court-appointed counsel for Simpson had no authority, without consulting with or obtaining the consent of his client, deliberately to forego Simpson's right to move for a new trial or to appeal. When he did so, counsel proved himself ineffective. More, he completely abdicated his function and deprived Simpson of the aid of any counsel at a critical stage of the criminal proceeding.
"Thus the absence of aid of counsel has deprived Simpson of his right to move for a new trial and to appeal. * * *"
As stated in Nelson v. State, Fla.App. 1968, 208 So.2d 506:
"The duties of an attorney assisting a defendant at trial are not at an end after verdict and the denial of his motion for a new trial. At this stage, it is his duty to advise with defendant in respect to his right to an appeal on any nonfrivolous grounds and the time limitation as well as the advantages or hazards in event of success.
"After conclusion of all proceedings in the trial court, the trial attorney cannot rightfully abandon his client's interest for personal reasons; his professional status in relation to his client does not permit it. The defendant is presumed not to be competent to protect himself and for that reason the state in felony cases is required to provide an indigent with the assistance of an attorney. When the defendant demands or requests that his attorney take an appeal, his duty in that regard is to take the appeal when it is deemed meritorious or nonfrivolous; but his duty to appeal is always limited by his professional ethical obligation to the court not to take a frivolous appeal."

*102 IV

DEFENDANT'S ATTORNEY: NEW CRIMINAL PRACTICE
An attorney having represented a defendant at trial is governed by the conclusions of law stated above and as stated in Smith v. State, Fla.App. 1966, 192 So.2d 346:
"An attorney having represented a defendant at trial is already fully informed as to the facts of the case which would support meritorious grounds for an appeal. If, in his judgment, there are no meritorious grounds to support an appeal he should so advise his client and the law does not obligate him to take an appeal; and the ethics of the Bar are that he should abstain from taking an appeal or, under such circumstances, being a party to an appeal, directly or indirectly. Of course, in a case involving capital punishment appeals are regarded more favorably than in noncapital cases. Furthermore, `meritorious grounds' for an appeal are not to be measured by expectation of success. Lastly, applications to the court for discharge by the trial attorney are not regarded with favor since an appeal is a step in the case. Southern Title Research v. King, supra [186 So.2d 539]; State ex rel. Andreu v. Canfield, supra [40 Fla. 36, 23 So. 591]; Section 59.30, F.S.A. Compare Johnson v. United States, 124 U.S.App. D.C. 29, 360 F.2d 844 (1966). An attorney assisting an indigent defendant at trial being of the opinion that there are meritorious grounds to support an appeal and that it is to the best interest of the defendant to appeal, and the defendant being fully advised wants an appeal, should prosecute an appeal, when consistent with the attorney's professional judgment governed by the principles of law and ethics above stated."
Victor v. Lane, 7 Cir.1968, 394 F.2d 268 in habeas corpus after noting that the district court had dismissed Victor's petition for failure to assert a deprivation of constitutional rights recited that "The Supreme Court of Indiana denied his petition. The court stated that under its decisions allowing a belated appeal, `there must be sufficient cause shown to excuse the delay, and there must be a prima facie showing that there is merit in the appeal sought.' It decided, without an evidentiary hearing, that Victor's petition made neither showing." They further held:
"It is now axiomatic that at the trial stage (and certain pre-trial stages) it is not presumed that an unrepresented defendant knows his rights with respect to retained or appointed counsel.
"There is, however, a presumption of some force that a completed trial has been properly conducted, and that reversible error is more improbable than probable. In many cases an appeal would be futile effort. Although most would agree that it is good practice for a trial court to inform a convicted defendant of his right to appeal, and to be furnished counsel if he is indigent, the absence of such advice is not deemed a denial of due process or equal protection.
"* * * * * *
"A frivolous appeal is utterly useless. If the appeal would have been frivolous if timely, defendant has lost nothing by failure to appeal within time, or by refusal of a belated appeal."

V

NEW RULE
As in the case of Simpson, supra, which has involved seven judicial hearings and decisions since his sentence to life imprisonment instead of the hazard of the death penalty, many convicted defendants, whether indigent or wealthy would not likely want a new trial or an appeal involving the hazard of a new trial which could result in a penalty of death or more severe punishment than was imposed in the first instance.
*103 In such cases, and in other cases where the trial attorney deems that in the exercise of his professional evaluation of the merits an appeal would be frivolous or without merits the Rules of Criminal Procedure ought to be amended to require the trial attorney, in event he does not intend to exercise the defendant's right to appeal, to file in the trial court a Notice of INTENTION NOT TO APPEAL, with reasonable promptness after the sentence, which notice should show the reason for not taking an appeal after advising with the convicted defendant and that his failure to appeal is justified. A copy of this notice should be promptly given the defendant and it would be advisable that the Notice filed contain an endorsement of the trial judge "Contents Noted". It would likewise be advisable that the notice filed contain a like endorsement by the defendant for the attorney's protection. Such action is good practice even in the absence of a Rule.
To pursue the foregoing practice serves to protect the defending attorney against unsound charges made years later and tend to avoid the subsequent squandering of judicial time and the wasting of the expense to the State of the Office of the Public Defenders and the Attorney General and other evils. The judgment appealed is affirmed.
Affirmed.
WALDEN, C.J., and CROSS, J., concur.