215 So.2d 90 (1968)
Floyd MOBLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 1521.
District Court of Appeal of Florida. Fourth District.
October 30, 1968.
*91 Louis R. Bowen, Jr., Public Defender, and William B. Barnett, Asst. Public Defender, Orlando, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
BARNS, PAUL D., Associate Judge.
This appeal is taken and prosecuted by the assistant public defender on behalf of the defendant convicted of breaking and entering with intent to commit a misdemeanor. We affirm.
The verdict, judgment and sentence were entered on June 14, 1967, and the notice of appeal is dated June 15, 1967. No motion for a new trial was made, doubtless, because the assistant public defender concluded that the defendant had received a fair and just trial and there were no meritorious grounds which he in good faith could urge for a new trial. Yet, he entered an appeal seeking reversal for asserted error at trial.

I
The assignment of error argued by appellant is that the court erred in allowing the prosecutor to comment to the jury in his closing argument, over objections of the defendant that the defendant knew the state "didn't have any fingerprint evidence against him, because he knows when he went in there he had on gloves." Gloves were offered in evidence against the defendant, but were excluded. However, the arresting officer had previously testified without objection that "at the time we stopped him the gentleman was removing, that is before he got out of the car, he removed his gloves."
The error asserted and the circumstances were as follows:
[MR. EAGAN, Assistant County Solicitor]
"* * * I submit he knows that we didn't have any fingerprint evidence against him, because he knows when he went in there he had on gloves.
"MR. BARNETT: The gloves have been ruled out of the evidence; this is an improper comment.
"MR. EAGAN: It was the testimony of the officers.
"THE COURT: The testimony by the officer that he personally saw the gloves removed from the defendant's hands.
"MR. BARNETT: Thank you, Your Honor."
Viewed objectively, this appeal is clearly frivolous and unjustified even if requested by the indigent defendant of his counsel, the assistant public defender, who represented him at trial and who had first-hand information of the trial proceedings, when he initiated this appeal. The law did not require it and the ethics proscribed it, unless the attorney believed these were "good grounds to support it."

II
F.R.Crim.P. 1.080, 33 F.S.A. provides that "the signature of an attorney shall constitute a certificate by him that he has *92 read the pleading or paper; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." This provision is declaratory of a standard of ethics imposed upon all attorneys and the exactions of such standard cannot justly be circumvented by an attorney drafting papers for the defendant to sign and file by withholding his own signature, which practice appears to have been pursued in other cases, but not in this case.
Neither due process nor equal protection require an appeal or that an indigent convicted of crime shall have as of course the services of an attorney provided by the state to take a frivolous appeal, even though he may appeal as a matter of right. Such a requirement would cause congestion and retard the speedy administration of justice by the squandering of Judicial services and other evils. No attorney is required in the discharge of his duty to a client to take a frivolous appeal or one which he justly believes without merit. Nelson v. State, Fla.App. 1968, 208 So.2d 506.
The constitutional right, provided by the Sixth Amendment, that "In all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defence" was prompted by reason of the fact that most defendants are presumed to be incompetent to protect their interest without professional assistance and guidance of an attorney in his professional capacity. As stated in Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733:
"* * * A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in Powell v. Alabama:
"`The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' 287 U.S., at 68-69, 53 S.Ct., at 64, 77 L.Ed. 158."
When a convicted defendant has had the benefit of counsel at trial to protect his interest, he has a right of appeal as a matter of right, but whether an appeal is to be or should be initiated by his counsel is a matter which calls for professional evaluation by his attorney after consultation with his client. The defendant's attorney is not required to exercise the defendant's right to appeal by taking perfunctory appeal guided only by the request of the defendant (whether indigent or not), devoid of the exercise of professional evaluation of the merits or good faith of the appeal; however, it is clearly apparent that the state's public defenders do.
The attorney assisting the defendant in his defense against a charge of crime is the agent of the defendant in a qualified and limited sense and in the exercise of his professional judgment and discretion he need not at every stage consult and advise with client as to his actions for and on behalf of his client and obtain his client's approval in the exercise of his professional services, even though he is the agent of the accused. He is not under all circumstances subject to the dictates of his client, but under some circumstances he is, as hereinafter noted.
*93 Florida Rule: Not Inviting Frivolous Appeals
F.R.Crim.P. 1.670 provides:
"When a judge renders a final judgment of conviction, imposes a sentence, grants probation or revokes probation, he shall forthwith inform the defendant concerning his rights of appeal therefrom, including the time allowed by law for taking an appeal."
This stated rule providing that the court "shall forthwith inform the defendant concerning his right of appeal" and does not contain the provisions of the federal rule that if the defendant so requests that the clerk of the court will "file forthwith a notice of appeal" on his behalf. This state rule leaves the question open for the professional evaluation and determination on an informed judgment after conference between trial counsel and the defendant; this conference is most essential for ethical reasons in order that his counsel keep the defendant fully advised, and particularly so in event the trial counsel for any reason does not recommend or intend to take an appeal. An appeal is a step in the case and not a new case.
Federal Rule: Inviting Frivolous Appeals
Fed.R.Crim.P. 32(a) (2), provides:
"(2) Notification of right to appeal. After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant."
It seems self-evident that this federal rule tends to encourage frivolous or "no merit" appeals in the federal system. The language of the above-quoted rule fosters and invites frivolous appeals paid for by United States Treasury  and burdens the United States Courts of Appeal to detriment of the public welfare. Suggs v. United States, D.C. Cir.1968, 391 F.2d 971, shows that Fed.R.Crim.P. 32(a) (2) and the entry of an appeal devoid of prior professional evaluation by the trial attorney representing the indigent, in initiating "a new order of things" results in the dissipation of the public funds and the squandering of the judicial resources; footnotes 14 and 15 state:
"14. Chief Judge Bazelon in his letter to the Attorney General dated May 17, 1967, stated:
"`Ninety-three percent of the criminal cases tried in the United States District Court for the District of Columbia are appealed to this court,' [adding that]
"`Our case load has risen from 48 to 78 cases per judgeship in the last few years and continues to increase.'"
"15. The possibilities are substantial. In the first nine months of this year, there occurred in the District of Columbia, 4091 robberies, 2400 cases of aggravated assault, 10,535 burglaries and 5921 auto thefts. (Uniform Crime Statistics released by the Federal Bureau of Investigation, December 11, 1967.)"
The language of this federal rule makes the judge the "advocate" for the defendant in lieu of his appointed counsel, when it requires the judge to advise the indigent convicted defendant that if the defendant so requests the clerk of the court will then and there "file forthwith a notice of appeal" on his behalf; a blind perfunctory action devoid of professional evaluation  by rule of court.

III
It is the common practice of the public defenders of this state to enter an appeal at the request of a convicted indigent defendant as of course after being assisted and advised by the public defender as his *94 counsel in the trial court, and after being lawfully and properly sentenced (at times even after a plea of guilty). This practice pursued by the state's public defenders, as well as attorneys appointed by the federal district judges to assist indigent defendants, is governed by the (1) indigency of the defendant and (2) his request for an appeal. The entry of the appeal is too often not in anywise guided by questions of merit or deterred because of frivolousness. The appeal is taken by the attorney blindly and perfunctorily without any professional evaluation of his action. This practice of the state's public defender likely costs the tax-payers of Florida in excess of $500,000.00 yearly. After the public defender has used his time at public expense and incurred the expense to the public of procuring a record of the trial proceedings, and after combing the record he often concludes that the appeal is frivolous and without merit and seeks to be discharged as the appellant's attorney for such reasons, Gossett v. State, Fla.App. 1966, 191 So.2d 281, which application, if granted, leaves the appeal entered by him in the lap of the appellate court without an attorney for the appellant. Anders v. State of California, 1967, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, required that he not be discharged, but must continue to nurse his appeal, which he has concluded to be without merit. The court does not want an indigent's appeal pending without an attorney representing the appellant, especially when the attorney seeking to withdraw, instituted it; this holding tends to ensure that the appeal not be meaningless but that it be meaningful even though without success.

IV
The reason given by the drafting committee for Fed.R.Crim.P. 32(a) (2) for providing that the court advise the convicted defendant at time of sentence of his right to appeal and "If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant" is: "Trial counsel may not regard his responsibility as extending beyond the time of imposition of sentence." Court appointed counsel for the indigent in federal criminal cases under a law now provides that: "A defendant for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States commissioner or court through appeal", § 3006A(c), Criminal Justice Act, effective in federal courts, 1965.
It has been estimated that most criminal appeals in the federal system are by indigents and are prosecuted by the attorney appointed to represent him at trial. This is at the public expense for prosecuting and at public expense in defending the appeal. If the defendant requests the entry of the appeal at the trial court's invitation pursuant to the rule, there is little or no room left for professional evaluation of the merits (with effect) before the cost to the public of completing the record on appeal has accrued and the time of the indigent's attorney and the United States Attorney has been expended. If the indigent defendant, himself, fails to accept the court's invitation to enter an appeal, his court appointed attorney is left with the opportunity to evaluate the merits of an appeal, but if subsequently the indigent should request his attorney to appeal, and the attorney should conclude that an appeal would be frivolous, he would likely have some difficulty in convincing the defendant that he had the assistance of competent counsel after the court's previous invitation to enter an appeal for him, if he had so requested.
As stated in The Courts, The Public and The Law Explosion, at 84, "The indigent criminal defendant has practically nothing to lose by appealing; he puts up none of the money. There is no good reason why, in these circumstances, indigent accused persons should not choose to litigate indefinitely, and some have shown themselves prone to do just that."
Where the indigent convicted defendant has received a life sentence, and he might run the hazard of the death penalty *95 in the event of a new trial after a successful appeal by reversal, the indigent's wishes govern his attorney as to an appeal when grounds for reversal appear. The death penalty was imposed after appeal, reversal and new trial when life imprisonment was imposed at the first trial in Palko v. State of Connecticut, 1937, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, and in Kehoe v. State, 1944, Mississippi, 18 So.2d 456. In other instances success on appeal may involve other hazards. Neither Palko nor Kehoe involved a Hobson's choice imposed on the defendant by the state as in Whitus v. Balkcom, 5 Cir.1964, 333 F.2d 496, and Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.
The "Appeal Explosion" in the United States courts of appeal was the principal subject of an address by Hon. Earl Warren, Chief Justice of the United States Supreme Court, to the American Law Institute (May 21, 1968), in which he stated:
"Today I want to center on the conditions which exist in the federal court system: conditions which are presently bad and which are ominous for the future. I hope that I may be able to enlist your aid and the aid of our entire legal profession in the serious work which is needed to meet the congestion which faces the federal courts.
"The situation is critical. The backlog has, in fact, again grown during the past twelve months, in spite of the additional judges who have been appointed in recent years.
"If the present trend is not reversed the United States courts of appeals are headed toward even greater difficulties than they have faced this past year. During the first nine months of this fiscal year the number of cases docketed was 17% greater than during the same period last year. And, though terminations increased somewhat during the period, the pending caseload was 777 higher on March 31, 1968, than it was a year before. That represents the growth of almost ten additional cases of backlog for each circuit judge in less than one year.
"If one looks at individual courts of appeals the approaching crisis becomes most apparent. Appeals docketed in the Fourth Circuit are 31% higher and in the Third Circuit 24% higher.
"The long-term picture for the eleven circuits is even more discouraging. The number of appeals filed this past year is 88% above the number filed in 1961 and the number pending is 143% of the number pending at the end of 1961.
"This increase in the work of the courts of appeals occurs at a time when the workloads of the district courts, which provide 80% of the appeals to the courts, have had no significant increase. To state it differently, the input into the system has been stable but the number of appeals is increasing to the point where major readjustments must be made in the system before it collapses of its own weight."
It appears that Fed.R.Crim.P. 32(a) (2) should be amended to permit and require professional evaluation by the indigent's counsel before the entry of an appeal and that an attorney in taking an appeal be required to act in good faith as to the grounds for its appeal which would tend to relieve the present threats of explosion in the United States Courts of Appeal, and that if for any reason the defendant's attorney does not intend to appeal, that he be required to proceed as suggested in the Coleman v. State, District Court of Appeal, Fourth District, 215 So.2d 96, opinion filed October 30, 1968.

Assistance of Counsel in Pending Appeal
In passing it might be well to note the cases of Beto v. Martin, 5 Cir.1968, 396 F.2d 432, in habeas corpus, holding that in a prior pending appeal it was a denial of appellant's constitutional right to the assistance of counsel in the pending appeal *96 when it was known to the court (1) that the criminal defendant was indigent and (2) the defendant wished assistance of counsel in the pending appeal even though the indigent has previously waived right to such assistance; and Baker v. Wainwright, 5 Cir.1968, 391 F.2d 248, in habeas corpus, holding that in an indigent's per se appeal it cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he knowingly and intelligently waived right to appointment of appellate counsel, citing Carnley v. Cochran, 1962, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70.
The judgment and sentence appealed are affirmed.
WALDEN, C.J., and CROSS, J., concur.